**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Strojnik,<br><br>   Plaintiff,<br><br>v.<br><br>Hyatt Hotels Corporation, et al.,<br><br>   Defendants. | No. CV-21-00741-PHX-DWL<br><br>**ORDER** |

Pending before the Court are three motions: (1) Defendants' motion to dismiss the complaint and request for sanctions (Doc. 8); (2) Defendants' motion to declare Plaintiff Peter Strojnik ("Strojnik") a vexatious litigant (Doc. 9); and (3) Strojnik's motion to remand (Doc. 13). For the following reasons, the motion to dismiss is granted and the other motions are denied.

**BACKGROUND**

I.  Strojnik's Litigation History

Over the last decade, Strojnik has been personally responsible for the filing of thousands of meritless lawsuits. In general, these "cookie-cutter lawsuits" with inadequate allegations have involved the assertion of claims under the Americans with Disabilities Act ("ADA") against small businesses. *Advocates for Individuals with Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 893 (D. Ariz. 2017) ("Template complaints filled with non-specific allegations have become the stock-in-trade of attorney[] Peter Strojnik" who, in conjunction with others, "pursued upwards of 160 cookie-cutter lawsuits in federal

court and, from early to later 2016, more than 1,700 such suits in Arizona state court").

Initially, Strojnik filed these ADA lawsuits in his capacity as an attorney, but he was disbarred by the Arizona State Bar in 2019. The notice of disbarment explained that Strojnik's *modus operandi* was to engage in "'extortionate' and 'ethically suspect' misconduct" by asserting "vague violations" and then "demand[ing] approximately $5,000 in attorney's fees regardless if the business remedied the purported violations." *Strojnik v. Ashford Scottsdale LP*, 2021 WL 2002977, *1 (D. Ariz. 2021) (citation omitted).

Next, Strojnik began bringing ADA lawsuits in federal court as a *pro se* plaintiff. Those lawsuits were routinely dismissed for lack of standing, and in 2020, Strojnik was declared a vexatious litigant by the United States District Courts for the Northern and Central Districts of California. *Strojnik v. IA Lodging Napa First LLC*, 2020 WL 2838814, *13 (N.D. Cal. 2020) ("Strojnik's litigation tactics are frivolous and harassing."); *Strojnik v. SCG Am. Construction Inc.*, 2020 WL 4258814, *7-8 (C.D. Cal. 2020) (finding, in the course of making vexatious-litigant finding, that "Strojnik's propensity for filing a multitude of disability discrimination cases, particularly against hotel defendants, is very well known," that "countless courts have questioned Strojnik's motives in pursuing the litigation and whether he has a good faith basis for his claims," and that "Strojnik's history contains countless filings of frivolous complaints and instances of directly ignoring court orders").

After this strategy proved ineffective, Strojnik began bringing *pro se* ADA lawsuits in Arizona state court. Many of the targets of these lawsuits responded by removing the action to federal court, based on the presence of a federal claim (*i.e.,* the ADA claim), and then moving to dismiss based on a lack of standing. *Strojnik v. Driftwood Hospitality Mgmt. LLC*, 2021 WL 50456, *8-9 (D. Ariz. 2021) ("As of December 19, 2020, Mr. Strojnik claims to have filed 64 cases with ADA claims in Arizona superior courts . . . [and] twenty-two of Mr. Strojnik's *pro se* ADA cases have been heard in this District since his disbarment after they were removed from state court"). Strojnik not only resisted these efforts but went on the offensive, seeking sanctions against opposing counsel. Such tactics

prompted the District of Arizona to declare Strojnik a vexatious litigant in January 2021. *Id.* at *10 ("The Court finds that Mr. Strojnik harasses and coerces parties into agreeing to extortive settlements . . . [and] finds Mr. Strojnik's litigation tactics frivolous and harassing."). The vexatious litigant order required Strojnik to pay a $10,000 bond within 21 days of (1) filing a new action in the District of Arizona, (2) removal of an action from state court, or (3) amending a complaint in an action already pending in the District of Arizona, but the bond requirement was limited to actions that alleged ADA violations. *Id.* at *11.

Afterward, Strojnik began filing *pro se* lawsuits in Arizona state court in which he dropped the ADA claim and only asserted state-law claims, including claims under the Arizonans with Disabilities Act ("AzDA"), which "mirror[s] Title III of the ADA." *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019). One surmises that this constituted an attempt to avoid removal and the District of Arizona's bond requirement. Some defendants have nevertheless removed these actions on diversity grounds. Such is the case here.

II.   This Case

On March 19, 2021, Strojnik filed this action in Maricopa County Superior Court. (Doc. 1-3 at 11.) Strojnik alleges that Defendant XHR Phoenix Palms, LLC ("XHR"), a subsidiary of Defendant Xenia Hotels and Resorts, Inc. ("Xenia"), owns Royal Palms Resort and Spa, the Unbound Collection by Hyatt ("Royal Palms"), but Defendant Hyatt Hotels Corporation ("Hyatt") has a "practice of misleading Plaintiff and the public into believing that [Royal Palms] is one of its hotels." (*Id.* at 11 ¶¶ 1-3.) Strojnik further alleges that "Hyatt, Xenia and XHR intentionally hide the true ownership of [Royal Palms] from Plaintiff and the public because Hyatt has excellent reputation in the lodging services industry, particularly as related to accessibility, but Xenia and XHR are known violators of accessibility laws." (*Id.* at 11 ¶ 4.)

According to the complaint, on February 13, 2021, Strojnik wanted "to get away," so he reviewed Hyatt's website, which directed him to Royal Palms. (*Id.* at 13 ¶¶ 14-15.)

Although the booking website contained accessibility information for "individual allegedly accessible rooms," it lacked accessibility information for the "general grounds." (*Id.* at 13 ¶ 16.)

On February 14, 2021, Strojnik sent a letter[1] to Royal Palms' "attorneys and general manager" (*id.* at 13 ¶ 17), which opened as follows:

> I must congratulate you all on your excellent work in Judge Humetewa case [sic]! I intended to get away from the stresses of dealing with Arizona's excellent ADA Defense Bar so I tried to get away to the Royal Palms. Unfortunately, Royal Palms remains woefully inaccessible.[2] I feel it my civic obligation to file suit in the Superior Court pursuant to the AzDA. In advance of your res judicata reaction, let me confirm that Judge Humetewa's extraordinary decision is not final, not on the merits, and that I will appeal it when the judge finally gets around to ruling on my Motion for a New Trial.

(Doc. 1-3 at 21.)

Strojnik's letter indicated that if Royal Palms responded "by March 18, 2021 that all AzDA violations have been cured," he would book a room—if not, he would file a new lawsuit. (*Id.* at 23.) An addendum featured poor-quality photographs of the property with the same sort of vague labels that typically accompany Strojnik's complaints. *See, e.g.*, *Strojnik v. Ogle*, 2021 WL 1250345, *2 (D. Ariz. 2021) ("[T]he complaint includes several unclear, dark, and grainy photos of the Hotel that are captioned with vague and conclusory language.").

Stojnik did not receive the requested response by March 18, 2021, so he filed suit on March 19, 2021. (Doc. 1-3 at 13 ¶ 19.) Strojnik alleges, in vague and conclusory language that echoes his many other complaints, that various accessibility barriers impair his full and equal access to Royal Palms due to his standard litany of alleged limitations on his major life activities. (*Id.* at 13 ¶¶ 21-22.) He brings claims of (1) fraud under the Arizona Consumer Fraud Act ("ACFA"), (2) civil conspiracy, (3) civil aiding and abetting,

---

[1] Strojnik attached the letter and its addendum to his complaint.

[2] Strojnik alleges that he sent this letter "to ascertain the scope of [Royal Palms'] accessibility," but it appears that Strojnik was already quite familiar with Royal Palms' alleged "architectural violations of the AzDA." (Doc. 1-3 at 13 ¶¶ 17-18.) Strojnik's letter "incorporate[d] by reference prior notices the Royal Palms received through the filings in *Strojnik v. Xenia* 2:20-cv-01434." (Doc. 1-3 at 23.)

- 4 -

and (4) denial of full and equal access under the AzDA. (*Id.* at 13-18.) Such claims have been routinely dismissed by Arizona courts. *See, e.g.*, *Strojnik v. FlagExpress, LLC*, 2021 WL 5183632, \*2 (Ariz. Ct. App. 2021) ("Various courts have called Strojnik's ADA cases inadequate cookie-cutter lawsuits. This case is no different. On appeal, we currently have this case from Strojnik and one other . . . . Our review of the complaints from both cases shows the same cut-and-paste problems. Not only has Strojnik failed to address the procedural and jurisdictional deficiencies in his nearly 2,000 previous complaints, even his typographical errors are unchanged.").

On June 10, 2021, Defendants filed a motion to dismiss pursuant to Rule 12(b)(1) for lack of standing and request for sanctions (Doc. 8) and a motion to have Strojnik "declared a vexatious litigant as to all complaints" filed in or removed to the District of Arizona (as opposed to only those containing ADA claims) (Doc. 9).[3]

The deadline for Strojnik to respond to the vexatious litigant motion was June 24, 2021, and the deadline to respond to the motion to dismiss was July 12, 2021. LRCiv 7.2(e); LRCiv 12.1(b). Both deadlines lapsed unheeded.

On July 15, 2021, Strojnik filed a "motion to remand for lack of diversity jurisdiction and cautionary response to Defendants' motion to dismiss." (Doc. 13.)

On July 29, 2021, Defendants filed a reply in support of their motion to dismiss and response to Strojnik's motion to remand. (Doc. 15.)

Strojnik did not file a reply in support of his motion to remand.

## DISCUSSION

I.  Motion To Remand

   A.  **Legal Standard**

"A defendant generally may remove any action filed in state court if a federal district court would have had original jurisdiction." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (citing 28 U.S.C. § 1441(a)). A federal district court has

---

[3] Defendants requested oral argument in each of their motions. These requests are denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(f).

- 5 -

"original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the parties are diverse. 28 U.S.C. § 1332(a). The amount in controversy is the "amount at stake in the underlying litigation," which comprises "any result of the litigation, excluding interests and costs, that entails a payment by the defendant," including "*inter alia*, damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees[4] awarded under fee shifting statutes." *Gonzales*, 840 F.3d at 648-49 (internal quotation marks and citations omitted). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Id.*[5]

"In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* (quotation omitted). In contrast, "a removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). If "damages are unstated in a complaint, or, in the defendant's view are understated," the defendant may allege the amount in controversy in the notice of removal, and "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds [the statutory minimum amount] when federal jurisdiction is challenged." *Ibarra*, 775 F.3d at 1197.

There is a "strong presumption" against removal jurisdiction. *Gaus v. Miles, Inc.*,

---

[4] "When the applicable substantive law makes the award of an attorney's fee discretionary, a claim that this discretion should be exercised in favor of plaintiff makes the requested fee part of the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998). "But when there is no direct legal authority for an attorney's fee, a request for a fee cannot be included in the computation or the jurisdictional amount." *Id.*

[5] The "value" of a case is not the same as the "amount at stake" in the case, as "the value of a case—unlike the amount in controversy—reflects both the amount at stake *and* the plaintiff's likelihood of prevailing." *Arias*, 936 F.3d at 929 n.6.

- 6 -

980 F.2d 564, 566 (9th Cir. 1992).[6] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where doubt regarding the right to removal exists, a case should be remanded to state court.").

Nevertheless, "[d]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met." *Dart*, 574 U.S. at 88-89. "[W]hen a defendant's assertion of the amount in controversy is challenged," "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88; *see also* 28 U.S.C. § 1446(c)(2)(B) ("[R]emoval of the action is proper . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]."). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997)). "[E]vidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925. A defendant need not "provide

---

[6] The "strong presumption" against removal in "mine-run diversity cases" was not altered by *Dart*, which addressed removal of class actions under the Class Action Fairness Act. *Dart*, 574 U.S. at 89; s*ee also Johnson v. Twin City Fire Ins. Co.*, 2015 WL 1442644, *2 n.2 (D. Ariz. 2015).

evidence proving the assumptions correct," as this would require a defendant to prove its own liability. *Id.* at 927. "[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have some reasonable ground underlying them." *Id.* (internal quotation marks omitted).

### B. The Complaint

For his claim under the ACFA, Strojnik seeks "injunctive relief requiring Xenia and XHR to cease and desist from continuing their violations of the [ACFA]," an order "requiring [] Xenia and XHR to engage in a corrective informational campaign to all its former, current and potential guests advising of true facts," "disgorgement of all profits received as a result of its violations of the [ACFA]," "damages to be determined at trial," and "punitive damages to be determined at trial." (Doc. 1-3 at 15.)

For his civil conspiracy claim, Strojnik states he "has been damages [sic] in an amount no less than $1.00." (*Id.* at 17 ¶ 49.) He seeks "damage to be determined by a jury in no event less than $1.00" and "punitive damages to be determined by a jury. (*Id.* at 17.)

For his aiding and abetting claim, Strojnik again seeks damages "in an amount no less than $1.00 (*id.* at 17 ¶ 55) and punitive damages (*id.* at 18).

For his AzDA claim, Strojnik seeks "[i]njunctive relief requiring Hyatt, Xenia and XHR to comply with disability laws fully and completely," "[r]elief described in AzDA," and "costs, expenses and attorney's fees." (*Id.* at 19.)

### C. The Notice Of Removal

The notice of removal alleges that "the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." (Doc. 1 at 2.) This allegation would be accepted if not "contested by the plaintiff." *Dart*, 574 U.S. at 87.

### D. The Briefs

The portion of the filing at Doc. 13 that constitutes Strojnik's motion to remand is less than one page long—it is 14 *lines* long, to be precise—and it offers no evidence whatsoever to support Strojnik's claim that "[t]he amount in controversy is $1.00." (Doc. 13 at 2.) Strojnik's assertion that "[t]his is not a damages case" is belied by the fact that,

for three of his four claims, he seeks compensatory and/or nominal damages as well as punitive damages.[7]  Nevertheless, Strojnik challenges Defendants' allegation as to the amount in controversy as having "no basis in fact" (Doc. 13 at 2), and therefore Defendants must "bear[] the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds [$75,000]." *Ibarra*, 775 F.3d at 1197.

Defendants devoted most of their filing at Doc. 15 to responding to Strojnik's motion to remand (Doc. 15 at 3-9) and also submitted a declaration from Defendants' counsel, Laurent R.G. Badoux (Doc. 15-1).  Defendants argue that (1) "[d]isgorgement of profits and massive property remodeling . . . would invariably exceed the $75,000 threshold," (2) Strojnik seeks a large attorneys' fees award, (3) Strojnik has expressed unwillingness to settle similar cases for less than $75,000, (4) Strojnik's assertion that his lawsuit does not qualify for compulsory arbitration in Maricopa County Superior Court demonstrates that the amount in controversy exceeds $50,000, and (5) Strojnik should be compelled by the Court to "provide evidence to clarify his intentionally conflicting statements as to the value of his lawsuit."  (Doc. 15 at 4-9.)

As noted above, Strojnik did not file a reply in support of his motion to remand.

E.     **Analysis**

Defendants assert that "[i]t is abundantly and objectively clear viewing the allegations of the Complaint (and the prayers for relief therein) that the amount in controversy in this action, on the face of the complaint, can reasonably be assumed to, and, as a matter of fact, does, exceed the $75,000 statutory threshold," and that "[f]or this reason alone, the Court should find that Defendants have met their burden to show by a preponderance of evidence that the amount in controversy exceeds the statutory threshold and deny the request for remand." (*Id.* at 6.)  Although it is true that "a damages assessment

---

[7]     Strojnik also states that "[i]n an indistinguishable case, [J]udge Logan remanded the case for the reasons stated." (Doc. 13 at 3.)  However, in that case, the defendant barely responded to the motion to remand and merely asked the Court to "assume" the amount in controversy requirement was met without offering any basis on which such an assumption could rest.  *Strojnik v. Hyatt Hotels Corporation*, 2:21-cv-00860-SPL, Doc. 14 at 3-4.  Here, Defendants responded substantively to the motion to remand.

may require a chain of reasoning that includes assumptions," *Ibarra*, 775 F.3d at 1197, this does not mean that the Court is authorized to *assume* the legal conclusion—that the amount in controversy is met. "[A]ssumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.*

The "chain of reasoning" in Defendants' response is sometimes difficult to follow. For example, Defendants assert (without citation) that "Strojnik himself once claimed that he gave away over $1 million to an organization supportive of individuals with disability from the proceeds of his settlements" (Doc. 15 at 4), but it's unclear what inference the Court is expected to draw from this, as there is no indication of how many lawsuits Strojnik settled to procure this sum—the $1 million could have been the sum of a large number of settlements. As discussed above, Strojnik's litigation history includes a "thousand-plus cases." *MidFirst Bank*, 279 F. Supp. 3d at 896. Thus, this assertion, if true, tells the Court nothing about what each case might have settled for, let alone the amount in controversy in *this* case.

Nevertheless, the Court agrees with Defendants that the complaint obviously demands more than $1 in damages. The question is whether the amount in controversy exceeds $75,000.

Defendants suggest that "[u]sing publically [sic] available data, including Hyatt's own investor's relations site and public financial filings, the Court can determine for itself and take judicial notice that Defendant Hyatt operates approximately 1000 hotels and has revenues that far exceed the $75,000 threshold." (Doc. 15 at 5-6.) However, the aggregate revenue from all of Hyatt's hotels only touches indirectly on the amount in controversy in this case. This case is about *one* hotel—Royal Palms[8]—and Defendants provide no information about its revenue. Defendants' assumption that the revenues of all of Hyatt's hotels can be considered when determining the amount in controversy in this action is not

---

[8] Although the complaint requests "[i]njunctive relief requiring Hyatt, Xenia and XHR to comply with disability laws fully and completely" (Doc. 1-3 at 19), it is clear from the context of the complaint as a whole that, in this action, Strojnik seeks full and complete compliance at Royal Palms, not at all of Hyatt's hotels.

- 10 -

"founded on the allegations of the complaint" and is therefore not reasonable. *Arias*, 936 F.3d at 925.

Defendants also offer no evidence as to the cost of remediating the alleged accessibility barriers at Royal Palms documented in an addendum to the complaint (Doc. 1-3 at 24-32), except for the declaration of Defendants' counsel, who asserts that in his experience, "the remedial costs . . . would likely occasion tens if not hundreds of thousands of dollars in physical work to the hotel premises, as described in the addendum to the Complaint, including wrought iron work, regrading of certain areas covered by rare pavers and flagstones, etc." (Doc. 15-1 at 3.) With all due respect to Mr. Badoux, he does not attempt to establish himself as an expert in building remediation and has offered no grounds for his vague assessment, aside from his "experience"—presumably in litigating similar cases. Had he provided estimates given by contractors for similar remediations at other hotels, reasonable assumptions could have been made about the costs for remediations at Royal Palms. At any rate, an estimate of "tens if not hundreds of thousands of dollars" is of limited use when the jurisdictional threshold is $75,000. An estimate of $10,000, for example, would merely establish that the injunctive relief for the AzDA claim gets the amount in controversy a small fraction of the way to the $75,000 threshold, such that the other claims for relief would need to make up the rest of that amount.

Similarly, although it is true that Strojnik certified that this case is not subject to compulsory arbitration (Doc. 1-3 at 10), Strojnik seeks affirmative relief other than a money judgment, which appears to exempt the case from compulsory arbitration, Ariz. R. Civ. P. 72(b)(1)(A), and at any rate, even if the certification could be construed as a concession that the amount in controversy exceeds $50,000, that is below the $75,000 jurisdictional threshold.

Moreover, although Defendants repeatedly reference Strojnik's baseless requests for attorneys' fees and the billing rate he claims, attorneys' fees cannot factor into the amount in controversy because Strojnik proceeds *pro se* in all his cases, including this one, such that there is no chance he will incur any attorneys' fees. *Pena v. Seguros La*

*Comercial, S.A.*, 770 F.2d 811, 816 (9th Cir. 1985) ("[P]ro se litigants are not entitled to attorney's fees without express statutory authorization."); *Munger Chadwick, P.L.C. v. Farwest Dev. & Const. of the Sw., LLC*, 329 P.3d 229, 230 (Ariz. Ct. App. 2014) ("In Arizona, it is the rule that parties who represent themselves in a legal action are not entitled to recover attorney fees.").

Defendants' argument that Strojnik should be compelled by the Court to "provide evidence to clarify his intentionally conflicting statements as to the value of his lawsuit" (Doc. 15 at 9) appears to attempt to shift the burden of establishing the amount in controversy onto Strojnik. Defendants titled this subsection of their response "The Court May Wish To Obtain a Statement on the Record from Plaintiff on the Issue of Damages." (*Id.*) To the extent Defendants are suggesting the amount-in-controversy requirement should be deemed to be satisfied unless Strojnik is willing to stipulate that his monetary relief in this case will not exceed $75,000, this is not an option. At this point, post-remand, a stipulation from Strojnik would be ineffective. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("Though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction."); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995) ("[L]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, *St. Paul* makes later filings irrelevant.").

If, before removal, Defendants had sought a stipulation to a $75,000 damages cap and Strojnik had refused to stipulate, Defendants might be entitled to an inference that Strojnik considers the amount in controversy to exceed $75,000. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) ("[A plaintiff's] refusal to admit that the combination of these recoveries would not exceed $75,000 raise[s] the reasonable inference that it would. . . . [A plaintiff] cannot benefit by playing a cat-and-mouse game, purporting to disclaim damages in excess of $75,000 but refusing to admit or stipulate that [his] damages will not exceed that amount."); *Felipe v. Target Corp.*, 572 F. Supp. 2d 455,

459 (S.D.N.Y. 2008) ("As the record reflects, Defendant's counsel attempted to seek an agreement with plaintiff's counsel to limit plaintiff's damages to $75,000 so as to avoid removal to federal court, . . . but plaintiff has not responded to that offer. She could easily defeat removal by simply stipulating an award of less than $75,001, but has not done so."). Here, however, "Defendants have neither alleged nor submitted documentation showing that Plaintiff[] refused an offer to stipulate or agree that [he] sought less than $75,000.00." *Gordon v. Allstate Ins. Co.*, 2010 WL 1949164, *2 (D. Ariz. 2010).[9]

As such, most of Defendants' arguments fail. But Defendants provide one type of evidence that rests on reasonable assumptions—Strojnik's demands in previous cases. Defense counsel's declaration notes that "in the *Driftwood* matter, 2:20-cv-01532-DJH, . . . Strojnik's damages demand to New Crescent was not less than $270,000 and his demand to Driftwood was not less than $75,000." (Doc. 15-1 at 3 ¶ 5.) Defendants do not mention the third case that was consolidated with *Driftwood* and *New Crescent*—*Strojnik v. Xenia Hotels and Resorts Incorporated et al*, 2:20-cv-01434-DJH, a case that focused on two hotels, one of which was Royal Palms, the same hotel at issue here. In that case, Strojnik claimed compensatory damages in the amount of "no less than $35,000.00" and punitive damages amounting to "no less than $250,000.00." (2:20-cv-01434-DJH, Doc. 1-3 ¶¶ 103, 109.) The sum of the alleged compensatory and punitive damages is $285,000, which, divided by two hotels, equates to $142,500 per hotel. Although the claims brought in that action are not entirely identical to those brought here, it is a reasonable assumption that the amount in controversy in this action more likely than not exceeds $75,000.

---

[9] "The law in [the Ninth] Circuit . . . is far from settled concerning the impact of a refusal to stipulate to the amount in controversy." *Gordon v. Allstate Ins. Co.*, 2010 WL 1949164, *2 (D. Ariz. 2010). Some district courts have concluded that "it would be unfair to give defendants a strategic advantage by being able to *force* plaintiffs to make a choice between stipulating against their future remedies and [litigating] in federal court." *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1199 n.2 (N.D. Cal. 1998). Others have considered a refusal to stipulate as an "indication" that the plaintiff "is seeking an amount in excess of the jurisdictional requirement." *Del Real v. Healthsouth Corp.*, 171 F. Supp. 2d 1041, 1043 (D. Ariz. 2001). The Court agrees with the Seventh Circuit that it is "only fair" to prevent a plaintiff from "hav[ing] it both ways" prior to removal—"she cannot disclaim damages in excess of $75,000 in order to defeat federal jurisdiction but preserve her right to recover more than that amount by refusing to admit or stipulate to the jurisdictional limit." *Oshana*, 472 F.3d at 512-13.

Strojnik declined the opportunity to respond to Defendants' arguments and evidence and offered no evidence of his own. Defendants have thus met their burden of establishing, by a preponderance of the evidence, that the amount-in-controversy requirement is met and that this action was properly removed on the basis of diversity jurisdiction.

II. Motion To Dismiss

Defendants move to dismiss the complaint due to lack of standing, failure to state a claim upon which relief can be granted, and failure to adhere to the pleading requirements for fraud claims. (Doc. 8 at 2.) "Defendants also seek an order of this Court ordering Strojnik to show cause why sanctions should not be imposed under Federal Rule of Civil Procedure 11(b)(1) for Strojnik's failure to demonstrate standing or otherwise meet federal pleading requirements." (*Id.*)

A. **Untimeliness Of Response**

The deadline for Strojnik to respond to the motion to dismiss was July 12, 2021, and Strojnik filed his response on July 15, 2021. In their reply, Defendants urge the Court to grant the motion to dismiss summarily pursuant to LRCiv 7.2(i) because Strojnik's reply was untimely. (Doc. 15 at 2-3.)

LRCiv 7.2(i) provides that if the opposing party "does not serve and file the required answering memorandum," to a pending motion, "such non-compliance may be deemed a consent to the . . . granting of the motion, and the Court may dispose of the motion summarily." "Failure to follow a district court's local rules is a proper ground for dismissal." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995). Furthermore, the Court "has the inherent power to dismiss a case *sua sponte* for failure to prosecute." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629-31 (1962).

The Court weighs the same factors when dismissing for failure to follow the Court's rules or orders and when dismissing for failure to prosecute. "Before dismissing the action, the district court is required to weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases [on] their merits; and

(5) the availability of less drastic sanctions." *Ghazali*, 46 F.3d at 53; *cf. Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984). "The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Dismissal is proper where "at least four factors support dismissal, or where at least three factors strongly support dismissal." *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (internal quotation marks omitted). Nevertheless, "[t]his 'test' is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent . . . or a script that the district court must follow." *Conn. Gen. Life,* 482 F.3d at 1096.

Here, Strojnik's response was three days late. Strojnik should have filed his response by the deadline, or should have filed a motion for extension of time before the deadline elapsed, or at the very least should have filed a motion to permit the untimely filing due to excusable neglect. Nevertheless, the three-day delay did not seriously harm the public's interest in expeditious resolution of litigation or the court's need to manage its docket, and it caused no prejudice to Defendants. Public policy weighs against summarily granting the motion. The Court concludes that the less drastic sanction of a warning to Strojnik that deadlines must be heeded in the future will suffice.

B. **Standing**

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing contains three elements": (1) a concrete and particularized injury in fact; that is (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision. *Id.* at 560-61. "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

…

1. AzDA

Strojnik brings a claim under the AzDA, which "mirror[s] Title III of the ADA," *Tauscher*, 931 F.3d at 962 n.3, and "is intended to be consistent with the Americans with Disabilities Act of 1990." *Wagner v. Maricopa Cty.*, 2009 WL 10673411, *6 (D. Ariz. 2009). The AzDA has the same standing requirements as the ADA. *MidFirst Bank*, 279 F. Supp. 3d at 898. Indeed, Arizona courts refer to the AzDA as "Arizona's version of the ADA." *Strojnik v. State ex rel. Brnovich*, 2021 WL 3051887, *1 (Ariz. Ct. App. 2021).

Arizona courts routinely dismiss Strojnik's AzDA and ADA claims. *Id.* "[T]he same analysis applies to both" ADA and AzDA claims. *Tauscher*, 931 F.3d at 962 n.3. *See also Freemyer v. Kyrene Vill. II, LLC*, 2011 WL 42681, *10 (D. Ariz. 2011) (analyzing standing requirement for ADA and AzDA claims without differentiation); *Siegel v. Dignity Health*, 2018 WL 11277609, *3 (D. Ariz. 2018) ("Plaintiff Casarez alleges that Defendant discriminated against him in violation of Title III of the ADA, Section 504 of the Rehabilitation Act, and the AzDA. . . . Because there is no material difference between the legal standards for each claim, the Court will not address each claim separately.").

Here, just as in the many other ADA/AzDA lawsuits Strojnik has filed, "[i]nstead of explaining how the alleged [accessibility barriers] prevent him from full and equal access to the hotels, Mr. Strojnik makes vague statements about his disabilities, and it is anybody's guess how the particular hotel features he photographs so meticulously actually impact him." *Ashford Scottsdale*, 2021 WL 2002977 at *9 (quoting *Driftwood Hospitality*, 2021 WL 50456 at *5); *FlagExpress, LLC*, 2021 WL 5183632 at *1 ("The first element of standing requires Strojnik to have 'a distinct and palpable injury.' . . . We need go no further in our analysis. Rather than showing a distinct and palpable injury, Strojnik—as he has done before—pleads vague disabilities, vague restrictions, and vague connections to the hotel property. The mere inclusion of hotel photos with vague captions . . . is inadequate when Strojnik obfuscates his own particular restrictions.").

Thus, Strojnik lacks standing to bring his AzDA claim.

…

2. ACFA

"To state a claim under the ACFA, Strojnik's complaint must sufficiently allege the . . . franchise agreement was fraudulent and the agreement injured him." *FlagExpress, LLC*, 2021 WL 5183632 at *2. Strojnik vaguely claims to have "suffered an injury resulting from his reliance on Xenia's self-promotion." (Doc. 1-3 at 15 ¶ 34.) Here, as in his other cases bringing ACFA claims, "he only made conclusory statements about how the Hotels' conduct injured him," but the "ACFA requires something more." *FlagExpress, LLC*, 2021 WL 5183632 at *2.

Thus, Strojnik lacks standing to bring his AzDA claim.

3. Civil Conspiracy And Aiding And Abetting

"Strojnik also cannot prevail under either his civil conspiracy or aiding and abetting claims because each tort requires him to prove an underlying tort." *Id.* at *3. "And because he based both claims solely off his deficient ACFA claim," they are subject to dismissal. *Id.*

C. **Dismissal**

The Court will dismiss the action, rather than remanding it, for the reasons articulated in *Ashford Scottsdale*. 2021 WL 2002977 at *10-12. Under 28 U.S.C. § 1447(c), the usual rule in a case that has been removed from state court is that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." However, in *Bell v. City of Kellogg*, 922 F.2d 1418 (9th Cir. 1991), the Ninth Circuit recognized an exception to this principle. Under *Bell*, when a district court "determines that it lacks subject matter jurisdiction in a removal case," it has discretion to dismiss, rather than remand, the action "[w]here the remand to state court would be futile." *Id.* at 1424. This is because "[d]istrict court resolution of the entire case," where there is no "conceivable" chance the plaintiff would succeed on remand, "prevents any further waste of valuable judicial time and resources." *Id.* at 1424-25. Although other Circuits have rejected *Bell*'s approach, holding that a remand is always required when a district court determines it lacks subject matter jurisdiction in a removal

action, *Bell* remains good law in the Ninth Circuit. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1198 (9th Cir. 2016). In *Ashford Scottsdale*, the Court concluded that Strojnik lacked standing because there was no injury in fact and that "remanding the action under these circumstances would be futile because there is no conceivable chance that Strojnik would succeed on remand," as the state court was certain to dismiss for the same reason. 2021 WL 2002977 at *12. The same is true here. *FlagExpress, LLC*, 2021 WL 5183632.

    D.    **Sanctions**

Although the title of Defendants' motion suggests that the motion includes a "request for sanctions," the motion does not identify the type of sanction being sought or advance any argument in favor of the imposition of any sanctions. Thus, to the extent the motion contains a request for sanctions, that request is denied.

III.    <u>Vexatious Litigant Motion</u>

Defendants filed a motion asking the Court to "issue an order expanding this Court's current [vexatious litigant] order against Strojnik to all complaints Strojnik may file pertaining in any way to public facility access." (Doc. 9 at 13.)[10]

The Court is disinclined to broaden the scope of the existing vexatious litigant order because no cases in which Strojnik is the plaintiff have been filed in, or removed to, the District of Arizona since August 13, 2021. This suggests that Strojnik may have been finally deterred from filing frivolous actions in state court that are removable to federal court. Thus, even if the requirements for a vexatious litigant order were otherwise satisfied, the Court is not persuaded that there is a need to issue one here. Such strong medicine should only be imposed in clear cases where there is a palpable need for relief and deterrence. *De Long v. Hennessey*, 912 F.3d 1144, 1447 (9th Cir. 1990) ("[S]uch pre-filing orders should rarely be filed."); *In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982) ("Of course, any such order is an extreme remedy, and should be used only in exigent circumstances.").

…

…

---

[10]    Defendants' unopposed requests for judicial notice (Docs. 10, 16) are granted.

Accordingly,

**IT IS ORDERED** that:

1. Strojnik's motion to remand (Doc. 13) is **denied**.

2. Defendants' motion to dismiss (Doc. 8) is **granted**. The Clerk of Court shall enter judgment accordingly and terminate this action.

3. Defendants' motion to broaden the scope of the District of Arizona's vexatious litigant order against Strojnik (Doc. 9) is **denied**.

Dated this 18th day of February, 2022.

Dominic W. Lanza
United States District Judge